UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

MARIO MARTINE SIMS,

                Plaintiff,

v.                                                   Case No. 21-cv-210-pp

CARLA GERNETZKE,
and DANIEL ROEBER,

                Defendants.

---

**ORDER DENYING WITHOUT PREJUDICE PLAINTIFF'S MOTION TO APPOINT COUNSEL (DKT. NO. 18)**

---

      Plaintiff Mario Martine Sims, confined at the Green Bay Correctional Institution and representing himself, filed a civil rights complaint alleging violations of his constitutional rights. Dkt. No. 1. The court screened the complaint and allowed him to proceed on an excessive force claim under the Eighth Amendment against Sergeants Gernetzke and Roeber based on allegations that after the plaintiff put a note in his mouth and started chewing it, the defendants grabbed his neck and choked him which resulted in a "fractured and scratched neck." Dkt. No. 7 at 3. The plaintiff since has filed a motion asking the court to appoint counsel to represent him. Dkt. No. 18.

      The plaintiff states that his "intelligent quotient" and reading scores show that he lacks the ability to litigate this case on his own. Dkt. No. 18 at 1. The plaintiff filed test results from a recent "TABE 12 ALL" test that tested his proficiency in reading, math and language. Dkt. No. 20-1 at 5. The results indicate that the plaintiff has "partial proficiency" in the Reading sub-categories of Reading Foundational Skills, Key Ideas and Details and

1

Integration of Knowledge and Ideas, and that he has "proficiency" in the Reading sub-category of Craft and Structure. Id. The results also show that the plaintiff has "partial proficiency" in the Language sub-categories of Conventions of Standard English, Vocabulary Acquisition and Use, and Test Types and Purposes. Id.

The plaintiff asserts that due to COVID-19 precautions, he has limited access to the law library and that he does not have the mental capacity to understand how to use it. Dkt. No. 18 at 1. He says that he wrote to three lawyers to try to find one on his own. Id. at 2. He also states that the jailhouse lawyer who prepared his motion to appoint counsel can no longer help him because of his current caseload. Id.

In a civil case, the court has discretion to recruit a lawyer for individuals who cannot afford to hire one. Navejar v. Iyola, 718 F.3d 692, 696 (7th Cir. 2013); 28 U.S.C. §1915(e)(1); Ray v. Wexford Health Sources, Inc., 706 F.3d 864, 866-67 (7th Cir. 2013). "[D]eciding whether to recruit counsel 'is a difficult decision: Almost everyone would benefit from having a lawyer, but there are too many indigent litigants and too few lawyers willing and able to volunteer for these cases.'" Henderson v. Ghosh, 755 F.3d 559, 564 (7th Cir. 2014) (quoting Olson v. Morgan, 750 F.3d 708, 711 (7th Cir. 2014)).

In exercising its discretion, the court must consider two things: "(1) 'has the indigent plaintiff made a reasonable attempt to obtain counsel or been effectively precluded from doing so,' and (2) 'given the difficulty of the case, does the plaintiff appear competent to litigate it himself?'" Eagan v. Dempsey, 987 F.3d 667, 682 (7th Cir. 2021) (quoting Pruitt v. Mote, 503 F.3d 647, 654-55 (7th Cir. 2007)). To satisfy the first prong, the court must determine that a plaintiff made a good faith effort to hire counsel. Pickett v. Chi. Transit

Authority, 930 F.3d 869, 871 (7th Cir. 2019). "This is a mandatory, threshold inquiry that must be determined before moving to the second inquiry." Eagan, 987 F.3d at 682. To demonstrate he satisfied the first prong, the plaintiff must show he contacted at least three lawyers and provide the court with (1) the lawyers' names; (2) their addresses; (3) how and when the plaintiff attempted to contact the lawyer; and (4) the lawyers' responses.

"The second inquiry requires consideration of both the factual and legal complexity of the plaintiff's claims and the competence of the plaintiff to litigate those claims." Eagan, 987 F.3d at 682. When considering the second prong, the court "must examine the difficulty of litigating specific claims and the plaintiff's individual competence to litigate those claims without counsel." Pennewell v. Parish, 923 F.3d 486, 490 (7th Cir. 2019). The court looks at "whether the difficulty of the case, factually, legally, and practically, exceeds the litigant's capacity as a layperson to coherently litigate the case." Id. This includes "all tasks that normally attend litigation," such as "evidence gathering, preparing and responding to court filings and motions, navigating discovery, and putting on a trial." Id. at 490-91. The court "must consider the plaintiff's literacy, communication skills, education level, litigation experience, intellectual capacity, psychological history, physical limitations and any other characteristics that may limit the plaintiff's ability to litigate the case." Id. at 491. In situations where the plaintiff files his motion in the early stages of the case, the court may determine that it is "impossible to tell whether [the plaintiff] could represent himself adequately." Pickett, 930 F.3d at 871.

The plaintiff has satisfied the first requirement by making a reasonable attempt to find a lawyer on his own. But the court has allowed the plaintiff to proceed on a straightforward excessive force claim against two defendants. The

complaint describes in detail the incident giving rise to his excessive force claim. The test results the plaintiff provided to the court may demonstrate that he is not a great reader, but they do not show that he can't read or write. It sounds like the plaintiff has had a fellow inmate helping him up to this point, and the court understands that the plaintiff may be worried about whether he—a person without any special knowledge of the law and who has some trouble with reading—will be able to figure out what to do. The court believes that he can.

This case is in the "discovery" phase. "Discovery" is another way of saying that the parties to a lawsuit can ask each other for information about the allegations in the lawsuit by sending each other written questions (called interrogatories) and requests for documents. A person does not need to be trained in the law, or to do legal research, to ask or truthfully answer questions or to ask for documents. The court believes that the plaintiff can ask the defendants questions about his case and ask them for the documents he thinks will help prove his claims.

After the discovery phase comes the "dispositive motion" phase. Dispositive motions typically are motions for summary judgment. In a summary judgment motion a party will ask the court to dismiss the case because that party believes that there are no genuine disputes of material fact and the law favors that party. If the defendants in this case file a motion for summary judgment, the plaintiff does not need to be trained in the law to respond to the motion, nor does he need to contact experts. Whether a court grants or denies summary judgment usually depends on whether there are one or more genuine disputes of material fact. The plaintiff knows what happened to him. The court is familiar with the law and, if there is a summary judgment

4

motion, will not need the plaintiff to explain the legal basis of his claims. It will need the plaintiff to explain which of the defendant's facts the plaintiff disputes and why. Even if the defendant is not as good at reading and writing as he would like to be, the court believes that he can tell the court which of the defendants' facts he disagrees with and explain why.

Finally, if the plaintiff needs more time to conduct discovery or respond to a dispositive motion, he should file a motion for extension of time *before* the deadline that he wants the court to extend, explaining why he needs more time.

The court **DENIES WITHOUT PREJUDICE** the plaintiff's motion to appoint counsel. Dkt. No. 18.

Dated in Milwaukee, Wisconsin this 6th day of May, 2022.

BY THE COURT:

_____
**HON. PAMELA PEPPER**
**Chief United States District Judge**